UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTOPHER STEWART, ET AL. | CIVIL ACTION |
| VERSUS | |
| QUALITY CARRIERS, INC., ET AL. | NO. 19-00606-BAJ-SDJ |

RULING AND ORDER

Before the Court are three related Motions: (1) Plaintiff's **Motion To Strike Defendants' Statement Of Uncontested Material Facts And Affidavit Of Ben Smith (Doc. 34)**; (2) Defendants Quality Carriers, Inc., Bay Insurance Risk Retention Group, Inc., Fireman's Fund Insurance Company, Old Republic Insurance Company, Transguard Insurance Company of America, Inc., and Abraham Baylor's (hereinafter "Defendants") **Daubert Motion In Limine To Exclude Or Limit The Testimony Of Jason Walton (Doc. 28)**; and (3) Defendants' **Motion For Summary Judgment (Doc. 27).** The Motions are opposed. (Doc. 45; Doc. 35; Doc. 36). The parties filed Replies. (Doc. 54; Doc. 52; Doc. 39). For the reasons stated herein, the Motions are **DENIED.**

I. FACTS

This case arises out of a multi-vehicle collision between Plaintiff Christopher Stewart, Defendant Abraham Baylor, and Mariah Craige.

On the evening of September 23, 2018, Baylor was driving a Freightliner tractor and hauling a liquid tanker trailer (hereinafter "Baylor trailer") on

Interstate 12 (hereinafter "I-12") Eastbound in Livingston Parish, Louisiana. (Doc. 27-1, ¶¶ 1–2; Doc. 36-1, ¶¶ 1–2). Craige was operating a Kia Rio sedan (hereinafter "Craige Kia") on I-12 Eastbound. (Doc. 27-1, ¶¶ 3, 22; Doc. 36-1, ¶¶ 3, 22). Stewart was operating a Ford (hereinafter "Stewart Ford") on I-12 Westbound. (Doc. 36-1, ¶ 10; Doc. 39-1, ¶ 10).

I-12 Eastbound has two lanes at the location of the collision. (Doc. 27-1, ¶ 4; Doc. 36-1, ¶ 4). Baylor was driving in the right lane, while Craige was driving in the left lane. (Doc. 27-1, ¶¶ 2, 17; Doc. 36-1, ¶¶ 2, 17). The Baylor trailer and Craige Kia were involved in an accident. (Doc. 27-1, ¶ 3; Doc. 36-1, ¶ 3). The evidence suggests that Baylor was traveling with his cruise control set at 65 mph in the 70-mph zone. (Doc. 27-1, ¶ 6; Doc. 36-1, ¶ 6). Craige was driving at 81-mph and did not brake at the time of the collision with the Baylor trailer. (Doc. 27-1, ¶ 19; Doc. 36-1, ¶ 19).

The physical evidence is indicative of the Craige Kia striking the left side fender of the Baylor trailer from the rear while moving forward. (Doc. 36-1, ¶ 1; Doc. 39-1, ¶ 1). The impact to the Baylor trailer was to the driver's side mud flap and fender. (Doc. 27-1, ¶ 12; Doc. 36-1, ¶ 12).

Just prior to the accident, Baylor looked in his side view mirrors to his left and saw a set of headlights about one car length behind his tractor trailer in the left, inside lane next to him. (Doc. 27-1, ¶ 10; Doc. 36-1, ¶ 10). When Baylor felt the Craige Kia hit his trailer and truck, he looked in his side view mirrors and saw the vehicle in the left lane next to his tractor trailer. (Doc. 27-1, ¶ 13; Doc. 36-1, ¶ 13). Baylor then brought his tractor and trailer to a controlled stop further down on the right

2

shoulder of the roadway. (Doc. 27-1, ¶ 15; Doc. 36-1, ¶ 15).

At the same time, the Stewart Ford was traveling Westbound on I-12 west of Exit 32 and was approaching the on-ramp merge lane. (Doc. 36-1, ¶ 10; Doc. 39-1, ¶ 10). Following the Baylor-Craige collision, the Craige Kia entered the median between I-12 Eastbound and I-12 Westbound. (Doc. 27-1, ¶ 21; Doc. 36-1, ¶ 21). The Craige Kia crossed into the Westbound lanes of traffic where it collided head-on with the Stewart Ford. (*Id.*). The Craige Kia slowed to 35.4 miles per hour after the Baylor-Craige collision, just five seconds before impact with the Stewart Ford. (Doc. 36-1, ¶ 17; Doc. 39-1, ¶ 17).

Plaintiff Stewart testified that he has no knowledge of what occurred on the Eastbound lanes of I-12 between the Craige Kia and the Baylor trailer. (Doc. 27-1, ¶ 22; Doc. 36-1, ¶ 22). Craige testified that she has no memory of the subject accident. (Doc. 27-1, ¶ 20; Doc. 36-1, ¶ 20). There was no physical evidence on the roadway to suggest that the Baylor trailer ever exited the right lane and entered the left lane of I-12. (Doc. 27-1, ¶ 23; Doc. 36-1, ¶ 23).

## II. DISCUSSION

Defendants move for summary judgment, contending that Plaintiff cannot meet his burden of proof on an essential element of his claims: Plaintiff cannot establish that the Baylor trailer exited his lane of travel and entered the lane occupied by Craige. (Doc. 27-2, p. 9).

The parties offer conflicting expert testimony on this point. Plaintiff's expert, Jason Walton, opines that there is no evidence to indicate that the Craige Kia

3

contributed to the collision in any way. (Doc. 28-9, p. 15). Rather, Walton concludes that Baylor executed an improper lane change and failed to take appropriate actions to prevent a collision. (*Id.*). Contrarily, Defendants' expert, Ben Smith, opines that Craige was driving inattentively and consistent with the Craige Kia drifting into the Baylor trailer. (Doc. 27-7, ¶ 28).

Both parties seek to exclude the opposing expert's opinions. For the reasons stated herein, the Court will permit both experts' opinions and deny summary judgment based on a genuine issue of material fact regarding the cause of the collision. *See* Fed. R. Civ. P. 56 (A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

It bears reminding that "the trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)). Rather, as *Daubert* makes clear, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Thus, while exercising its role as a gate keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits. *Id.*

a. **Plaintiff's Motion to Strike Defendants' Statement Of Uncontested Material Facts And Affidavit Of Ben Smith (Doc. 34)**

   i. **Legal Standard**

The Court has "broad discretion [] in ruling on the admissibility of expert testimony in the summary judgment context." *Snapt Inc. v. Ellipse Commc'ns Inc.*, 430 F. App'x 346, 351–52 (5th Cir. 2011). For the purposes of summary judgment, an expert affidavit must include materials on which the expert based his opinion, as well as an indication of the reasoning process underlying the opinion. *Boyd v. State Farm Ins. Companies*, 158 F.3d 326, 331 (5th Cir. 1998).

   ii. **Discussion**

Plaintiff seeks to strike paragraphs 27 and 28 of Benjamin N. Smith's Affidavit[1] (Doc. 27-7) and paragraphs 25 and 26 of Defendants' Statement of

---

[1] Paragraphs 27 and 28 of Smith's Affidavit provide:

27. The electronic data report from the Craige vehicle's airbag system obtained by me on December 4, 2019 contains steering data in relation to the impact between the Craige vehicle and the Baylor vehicle. The steering data on the Craige vehicle is consistent with her steering minimally at less than 5 degrees or with her vehicle drifting without deliberate steering input. Lack of deliberate steering input by Craige does not necessitate that the Baylor vehicle entered Craige's lane. Steering input by Craige immediately after impact with the Baylor vehicle is not recorded.

28. Based on the accepted scientific method of determining the time necessary to move laterally on a roadway, it would have taken the Baylor tractor and tanker between 2.7 and 3.1 seconds to move laterally 5 to 6 feet to its left. If Craige was driving attentively at the time of the accident, then she would have been expected to perceive and react to the Baylor vehicle movement in 1.1 to 1.9 seconds before impact. The Craige vehicles's electronic data shows no response at all, a clear indication that Craige was driving inattentively and consistent with the Criage vehicle drifting into the Baylor tractor-tanker.

Uncontested Material Facts[2] (Doc. 27-1), which rely on Smith's Affidavit. (Doc. 34). Defendants present these statements in support of their Motion for Summary Judgment. (Doc. 27). In short, Plaintiff seeks to strike Smith's statements regarding the cause of the accident at issue.

Plaintiff asserts that the statements at issue are not supported by facts, data, personal knowledge, or competency. (Doc. 34-1, p. 3). Plaintiff contends that Smith's statements include self-serving assertions and conclusions. (*Id.*).

Defendants respond that Smith is qualified as an accident reconstruction expert in both education and experience. (Doc. 45, p. 3). Defendants contend that each fact or conclusion made by Smith in his affidavit is supported by reference to specific data and accepted scientific methods or research. (*Id.* at p. 5).

Plaintiff does not challenge Smith's qualifications or methodology, but rather challenges the underlying facts or data upon which Smith's opinion is based. (*See generally* Doc. 34-1). The reliability of data underlying an expert's opinion, however, goes to the weight of the evidence, and is subject to cross-examination, but should not serve as basis for its exclusion. *See Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 393 (5th Cir. 2002) ("Unocal instead attempts to show that the underlying data—provided by Unocal—was itself unreliable. This is an issue that Unocal could—and did—raise

---

[2] Paragraphs 25 and 26 of Defendants' Statement of Uncontested Material Facts provide:

> 25. Craige would not have to actively steer the Kia to drift into the Quality Carriers tractor-trailer.

> 26. The electronic evidence from the Kia airbag is consistent with Craige having steered less than 5 degrees to her right or drifting without steering.

in cross-examination.*")*; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). Accordingly, Plaintiff's objection to Smith's "facts [and] data" primarily goes to the weight of Smith's testimony but does not serve as a basis for exclusion.

Plaintiff's argument that Smith lacks personal knowledge does not persuade otherwise. Federal Rule of Evidence 702 does not require an expert to have personal knowledge. Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: . . .").

Accordingly, Plaintiff's Motion To Strike Defendants' Statement Of Uncontested Material Facts And Affidavit Of Ben Smith (Doc. 34) is denied.

### b. **Defendants' *Daubert* Motion In Limine To Exclude Or Limit The Testimony Of Jason Walton (Doc. 28)**

#### i. **Legal Standard**

The admissibility of expert testimony is governed by Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which require the Court to serve as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

Under Rule 702, the Court must consider three primary requirements in determining the admissibility of expert testimony: (1) qualifications of the expert witness; (2) relevance of the testimony; and (3) reliability of the principles and methodology upon which the testimony is based. *Fayard v. Tire Kingdom, Inc.*, No. 09-171-BAJ, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010). In *Daubert*, the

7

United States Supreme Court listed factors to consider when determining reliability of expert methodology, to include "whether a theory or technique can be (and has been) tested, whether it has been subjected to peer review and publication, the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, as well as general acceptance." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997) (internal alterations omitted; quoting *Daubert*, 509 U.S. at 593–594).

This list is merely illustrative, however, and the Supreme Court has also emphasized that "the *Daubert* analysis is a 'flexible' one, and that 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (quoting *Kumho Tire*, 526 U.S. at 150). "The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 152).

Notably, *Daubert* motions are *not* appropriate when they attack "the underlying facts upon which [an expert's] opinion was based. That approach is not contemplated under a *Daubert* challenge." *In re Katrina Canal Breaches Consol. Litig.*, No. 10-866, 2012 WL 4328354, at *1 (E.D. La. Sept. 20, 2012). Rather, the reliability of data underlying an expert's opinion goes to the weight of the evidence,

and is subject to cross-examination, but should not serve as basis for its exclusion. *See Tyler v. Union Oil Co. of Ca.*, 304 F.3d 379, 393 (5th Cir. 2002) ("Unocal instead attempts to show that the underlying data—provided by Unocal—was itself unreliable. This is an issue that Unocal could—and did—raise in cross-examination."); *In re Katrina Canal Breaches*, 2012 WL 4328354, at *1 ("Courts should not be lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility."). The validity or correctness of an expert's conclusions are issues for the jury to determine *after* the *Daubert* analysis. *See Pipitone*, 288 F.3d at 250 ("The fact-finder is entitled to hear Dr. Coco's testimony and decide whether it should accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which Dr. Coco relied are accurate.").

Ultimately, the Court has broad discretion in deciding whether to admit expert opinion testimony. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998). "Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Barnett v. Nat'l Cont'l Ins. Co.*, No. 3:17-CV-153-JWD-EWD, 2019 WL 126732, at *3 (M.D. La. Jan. 8, 2019) (quoting *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011)).

With these principles in mind, the Court turns to the Defendants' *Daubert* challenge.

ii. **Discussion**

Defendants seek to exclude Plaintiff's proposed accident reconstruction expert, Jason Walton, because his opinions allegedly do not meet the requirements of Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 26(a)(2)(B)(ii). (Doc. 28). Defendants argue that Walton's opinions do not include reliable principles and methods or reliably apply principles and methods to the facts of the case. (Doc. 28-1, p. 5).

First, Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires an expert report to include the facts or data considered by the witness in forming his opinions. The Court is not persuaded by Defendants' argument that Walton's expert report is violative of Rule 26(a)(2)(B)(ii). Rather, a review of Walton's report indeed reveals the facts and data upon which his opinion is based. (Doc. 28-9, p. 7–9). Similar to Smith, the reliability of data underlying Walton's opinion goes to the weight of the evidence, and is subject to cross-examination, but should not serve as a basis for its exclusion. *See Tyler v. Union Oil Co. of Ca.*, 304 F.3d 379, 393 (5th Cir. 2002).

Second, under Federal Rule of Evidence 702, the Court must consider three primary requirements in determining the admissibility of expert testimony: (1) qualifications of the expert witness; (2) relevance of the testimony; and (3) reliability of the principles and methodology upon which the testimony is based. *Fayard v. Tire Kingdom, Inc.*, No. 09-171-BAJ, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010).

Defendants do not challenge Walton's qualifications or the relevance of his

testimony. (*See generally* Doc. 28). Accordingly, the Court turns to the reliability of the principles and methodology upon which Walton's testimony is based. *Id.* Defendants challenge Walton's principles and methodology in reaching the following conclusions: (1) the mud flap on the Baylor trailer left a rubber material transfer on the Craige Kia, which shows that the Baylor trailer entered Craige's lane; (2) the Craige Kia left the roadway at a 16 degree angle; (3) had the Craige Kia turned or merged into the Baylor trailer, the Craige Kia would have rotated clockwise off of the roadway into the median; and (4) the Craige Kia could not have drifted into the Baylor trailer and hit the mud flaps and fender due to the left rear tires of the tractor being in the way. (Doc. 28-1, p. 5–7).

Plaintiff responds that Walton has identified facts, physical evidence, and data to support his conclusions. (Doc. 35, p. 1). Additionally, Plaintiff argues that Walton's analyses follow scientific methodology and Walton's conclusions are based on substantial knowledge and expertise, satisfying the requirements set forth in Rule 702 and *Daubert*. (*Id.*). Plaintiff asserts that Walton has reviewed photographs, sworn testimony, physical evidence, data downloads, and commonly accepted methodology in the field of accident reconstruction. (*Id.* at p. 6). Plaintiff argues that Defendants simply do not agree with Walton's conclusions, but the Court should focus on the principles and methodology used by the expert rather than the expert's ultimate conclusions. (*Id.* at p. 5 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)).

A review of Walton's expert report shows that in forming his conclusions, he

conducted a personal inspection of the collision scene, reviewed reports, photographs, measurements, diagrams, event data recorder downloads of each vehicle, and deposition testimony. (Doc. 28-9, p. 7–9). Walton asserts that the download of the Craige Kia, the physical evidence of the vehicles involved, and the physical evidence documented at the scene support his opinion as to the cause of the collision.

The Court previously held that an accident reconstruction expert's methodology was "reliable enough for the purpose of admissibility" when the expert's methodology consisted of an inspection of the site and taking numerous photographs for review. *Young v. Am. Eagle Lines*, No. CV 05-1079-JVP-SCR, 2007 WL 9710791, at *2 (M.D. La. Feb. 14, 2007). There, the proposed expert "detailed his observations and explained that his opinions were based upon his personal inspection and photographs taken of the trailer, his experience in accident reconstruction, his education as a mechanical engineer, and his personal knowledge of the trailer's construction." *Id.* Additionally, the expert "conducted a visual inspection of the trailer and reviewed photographs of it." *Id.* The Court found that the proposed expert's "failure to conduct specific testing, perform calculations, and/or review additional materials are factors for the jury to consider when weighing the evidence." *Id.* at *3.

The Court finds this case to be similar. Although Walton reached a different conclusion about the forces involved in the accident and their effect on the vehicles, his methodology is sufficient for the purpose of admissibility. *Graham v. Hamilton*, 872 F. Supp. 2d 529, 538 (W.D. La. 2012) (expert's methodology reliable when he detailed the impacts that the plaintiff's car sustained based on a review of the police

reports, eyewitness accounts, and photographs of the accident scene, and then used his expertise to estimate the vehicle's likely change in speed as a result of the collision); *see also Burgo v. Davis*, No. 15-2430, 2016 WL 3257589, at *1, 4 (E.D. La. June 14, 2016) (accident reconstruction expert's opinion reliable when he relied upon photographic evidence of the accident, but did not personally inspect the vehicles); *see also Thomas v. Chambers*, No. CV 18-4373, 2019 WL 1670745, at *4 (E.D. La. Apr. 17, 2019) ("Conflicts among the experts' opinions must be resolved by the jury.").

The Court reminds the parties that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). Additionally, while Defendants take issue with Walton's conclusions, the Supreme Court has recognized that the focus, "of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594–95. Because the Court has found Walton's principles and methodology sufficient, Defendants' *Daubert* Motion In Limine To Exclude Or Limit The Testimony Of Jason Walton (Doc. 28) is denied.

c. **Defendants' Motion for Summary Judgment (Doc. 27)**

i. **Legal Standard**

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine"

if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on motions for summary judgment, courts are required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Coleman v. Hous. Indep. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. *E.g., Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no genuine issue of material fact to prevent the granting of [Defendant's] Motion, and therefore, the Court could grant [Defendant's] Motion for Summary Judgment on this basis alone.").

ii. **Discussion**

To prevail on the issue of liability, Defendants argue that Plaintiff is required to identify specific evidence in the record to support his claims that the Baylor trailer exited his lane and entered the left lane of I-12; Plaintiff cannot rely on unsubstantiated assertions, improbable inferences, and unsupported speculation. (Doc. 27-2, p. 5, 9). Defendants contend that Baylor was not negligent because he was traveling straight in his own lane and obeying the traffic laws when the Craige vehicle collided with his vehicle. (*Id.* at p. 8). Because Plaintiff cannot meet his burden of proof on an essential element of his claim, Defendants assert that summary judgment is warranted. (*Id.* at p. 9).

Plaintiff responds that the central dispute is the physical placement of the initial collision between the Craige Kia and Baylor trailer, specifically, whether Craige merged into Baylor or Baylor merged into Craige. (Doc. 36, p. 3). Citing testimony of its expert Walton, Plaintiff asserts that the physical evidence is indicative of the Craige Kia making contact with the left side of the Baylor trailer fender from the rear while moving forward or straight-ahead. (*Id.* at p. 4). Plaintiff asserts that the "rubber material transfer to the Craige Kia passenger door A-pillar and damage to the trailer fender is further proof that the Baylor trailer merged into the Craige Kia." (*Id.* at p. 5).

After permitting both Smith and Walton's testimony, there is clearly a core factual dispute between the parties regarding the cause of the accident—namely, whether the Craige Kia or Baylor trailer merged into the other vehicle. The Court

15

may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986).

Because the Court finds that a genuine issue of material fact precludes summary judgment, Defendants' Motion For Summary Judgment (Doc. 27) is denied.

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion To Strike Defendants' Statement Of Uncontested Material Facts And Affidavit Of Ben Smith (Doc. 34)** is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants Quality Carriers, Inc., Bay Insurance Risk Retention Group, Inc., Fireman's Fund Insurance Company, Old Republic Insurance Company, Transguard Insurance Company of America, Inc., and Abraham Baylor's *Daubert* **Motion In Limine To Exclude Or Limit The Testimony Of Jason Walton (Doc. 28)** is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants Quality Carriers, Inc., Bay Insurance Risk Retention Group, Inc., Fireman's Fund Insurance Company, Old Republic Insurance Company, Transguard Insurance Company of America, Inc., and Abraham Baylor's **Motion For Summary Judgment (Doc. 27)** is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's **Request For Oral Argument (Doc. 37)** is **DENIED.**

Baton Rouge, Louisiana, this 30th day of June, 2021

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**